Lewis and Carolyn PATE, Velma Hinton, and John L. Killingsworth, Plaintiffs-Appellants,

v.

SEABOARD RAILROAD, INC., d/b/a Seaboard Systems, Defendant-Third Party Plaintiff-Appellee,

Brian N. McTamney, Third Party Defendant-Appellant.

No. 86–8298.

United States Court of Appeals, Eleventh Circuit.

June 23, 1987.

John H. Ridley, Atlanta, Ga., for Pate.

Richard L. Mullins, Timothy N. Shepherd, Andrew J. Whalen, III, Griffin, Ga., for Hinton & Killingsworth.

Paul R. Bennett, Billy E. Moore, Columbus, Ga., Robert D. Stein, Hapeville, Ga., for McTamney.

Jack H. Senterfitt, Atlanta, Ga., for Seaboard R.R., Inc.

Before FAY and KRAVITCH, Circuit Judges, and MORGAN, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

At about 11:00 on the night of April 13, 1983, in Haralson, Georgia, nineteen year old Brian McTamney was giving seventeen year old Bobby Pate and fifteen year old Nancy Killingsworth a ride home from an evening of fishing when McTamney's pickup truck was struck by a northbound Seaboard Railroad train. The train impacted the passenger side of McTamney's vehicle, pushing the truck approximately 2100 feet down the tracks before coming to a stop. Bobby Pate and Nancy Killingsworth were killed. Brian McTamney was seriously injured.

The parents of the deceased youths, Lewis and Carolyn Pate (Pate appellants) and Velma Hinton and John L. Killingsworth (Killingsworth appellants), brought wrongful death diversity actions in federal court against Seaboard System Railroad, Inc. (Seaboard). Seaboard filed third party complaints against appellant McTamney in each case, and McTamney counterclaimed against Seaboard. The cases were consolidated by agreement of the parties, and the consolidated action proceeded to jury trial with the Pate appellants, Killingsworth appellants, and McTamney all aligned as plaintiffs.[1]

The jury returned a verdict in favor of Seaboard on all claims and counterclaims.[2] The primary issues at trial were: (1) whether railroad cars parked on a storage track had been parked too close to the grade crossing, thereby making it difficult for drivers attempting to cross the grade crossing to see northbound trains; (2) whether the operators of the Seaboard train on the night in question failed to keep an adequate lookout and to blow the train's whistle or sound its horn to warn drivers that the train was approaching; (3) whether Seaboard should have installed some type of lights or warning signals on the crossing, or required that trains slow down when passing through Haralson because of the dangerous nature of the crossing; and (4) whether McTamney exercised due care[3] in crossing the tracks.

---

1. The district court granted partial summary judgment for Seaboard on the Pate and Killingsworth plaintiffs' claims for exemplary, punitive, and vindictive damages, and on plaintiffs' claims for emotional distress and mental suffering. The court granted a directed verdict for Seaboard on McTamney's claim for punitive damages at the close of all of the evidence.

2. None of the appellants moved for a directed verdict or a judgment notwithstanding the verdict.

3. The plaintiffs presented evidence at trial indicating that McTamney and his passengers had not been under the influence of any drugs at the time of the accident.

Appellants moved for a new trial, alleging that the verdict was contrary to the evidence and the law and that the court erred in instructing the jury. The court denied the motions, because:

Although the Court might have reached a different verdict had it been the trier of fact, the Court finds no sufficient basis for granting a new trial. Even though there was ample evidence from which the jury could have found defendant negligent, the jury reasonably could have relied on Trooper Pollard's testimony and other credible evidence to find that the accident was caused solely by the negligence of third-party defendant. Moreover, after reviewing the jury instructions in light of the arguments now raised, the Court concludes that the charge as a whole fairly and adequately apprised the jury of the applicable law.

Appellant McTamney appealed from the denial of his motion for a new trial.[4] The Pate and Killingsworth appellants appealed from the judgment on the jury verdict and from the denial of their new trial motions.

I

■ We begin with appellants' argument that the court erred in denying their motions for a new trial on the basis of erroneous and prejudicial jury instructions. Motions for a new trial are committed to the discretion of the trial court, *McDonough*

*Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984); our review of the court's refusal to grant a new trial is limited to ascertaining whether there has been a clear abuse of discretion. *Goldstein v. Manhatten Indus. Inc.,* 758 F.2d 1435, 1447–48 (11th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985). In determining whether the district court abused its discretion we examine the challenged instructions as part of the entire charge, in light of the allegations of the complaint, the evidence presented, and the arguments of counsel, to determine whether the jury was misled and whether the jury understood the issues.[5] *Iervolino v. Delta Air Lines, Inc.,* 796 F.2d 1408, 1413 (11th Cir.1986); *Pesaplastic, C.A. v. Cincinnati Milacron Co.,* 750 F.2d 1516, 1525 (11th Cir.1985).

A.

■ The Pate and Killingsworth appellants allege that the district court erred in charging the jury that:

No passenger shall ride in a truck in such a position as to interfere with the driver's view to the sides nor shall any passenger ride in a truck in such a position to interfere with the driver's control over the driving mechanism of the truck.

*See* O.C.G.A. § 40–6–242(b). The Pate and Killingsworth appellants objected to the

---

**4.** Seaboard suggests that McTamney's failure to appeal from either the final judgment entered on the jury verdict or the court's ruling directing a verdict on McTamney's punitive damages claim should limit our review of McTamney's claims to those directly related to the new trial motion. Seaboard apparently fails to realize that orders denying motions for a new trial are not "final decisions" within the meaning of 28 U.S.C. § 1291, and therefore not appealable. *See, e.g., State Nat'l Bank of El Paso v. United States,* 488 F.2d 890 (5th Cir.1974); *Carpenter v. Klosters Rederi A/S,* 604 F.2d 11 (5th Cir.1979). Nevertheless, we review this jurisdictional question *sua sponte,* and conclude that McTamney's notice of appeal will be construed as an appeal from the final judgment in this case. Appellant McTamney's motion for a new trial and notice of appeal were timely filed, there is no question about which final judgment McTamney intended to appeal from, and there is no prejudice to Seaboard in construing McTamney's notice of appeal in this manner. In such circumstances,

this court will not "stand on technicalities," and the intent of the parties will be effectuated. 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2828 (1973). *See Bros. Inc. v. W.E. Grace Mfg. Co.,* 320 F.2d 594, 600–01 (5th Cir. 1963); *Atlantic Coast Line R.R. Co. v. Mims,* 199 F.2d 582 (5th Cir.1952). *See also Hennessy v. Schmidt,* 583 F.2d 302, 306 & n. 5 (7th Cir.1978) (citing cases); *McGowne v. Challenge-Cook Bros., Inc.,* 672 F.2d 652, 658–59 (8th Cir.1982); 6A J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* ¶ 59.15[1] (2d ed. 1986). We therefore have jurisdiction to review McTamney's claims.

**5.** The district court ruled that all plaintiffs and the third party defendant would be deemed to have joined in an objection stated by any one of them. Accordingly, we do not differentiate between the plaintiffs/appellants and the third party defendant/appellant in our discussions of what objections were made.

charge. We examine the allegations of the complaint, the arguments of counsel, and the evidence presented at trial to determine whether the charge was proper in this case.

McTamney testified that in attempting to cross the four rails at the Todd Road crossing, he stopped three times prior to the impact: once about a car length in front of the first rail on the storage track; once just after the front wheels of his truck crossed over the first rail of the storage track; and once just prior to crossing over the third rail (first rail of the main track). McTamney indicated that he did not shift out of first gear during this time and that he "leaned up and looked" both ways each time he stopped. According to McTamney, at the last stop immediately prior to the crash, "I saw my truck, and I saw Bobby [Pate] and Nancy [Killingsworth], but I looked over, and that's all I saw, just the window, and then it was just dark." McTamney denied having heard any horns or whistles or having seen an approaching train or any train lights.

Evidence at trial created an ambiguous suggestion that McTamney's passengers might have partially obstructed his view. McTamney's four-wheel drive pickup truck had bucket seats with a console between the seats and two gear shift levers on the floor. Brian McTamney testified that, on the night of the accident, Bobby Pate was seated in the passenger seat next to the door and Nancy Killingsworth was seated to Pate's left, half on the seat and half on the console. An accident reconstruction expert indicated that a passenger seated in the passenger seat would impair the driver's line of sight down the tracks due to the fact that a driver crossing the tracks from the west would have to look behind him somewhat when looking to his right for northbound trains because the tracks cross the road at an angle and curve away to the southwest. The driver would therefore have to lean forward or attempt to look out the rear window of the truck to see around both any passengers and the metal beam pillar between the passenger door window and the rear window of the truck's cab. This evidence created an arguable inference that the passengers in McTamney's vehicle, by both being seated in the passenger bucket seat with Nancy Killingsworth half on the seat and half on the console, negligently contributed to McTamney's failure to see the oncoming train.

Passenger contributory negligence was not, however, an issue in the case. No passenger contributory negligence defense was raised in appellee's answers, in the pretrial order, or in any of appellee's arguments to the jury. Appellee concedes in its arguments before this court that passenger contributory negligence was not at issue. The district court agreed that appellee had not raised a passenger contributory negligence issue,[6] but apparently viewed the challenged charge as allowing the jury to conclude that *McTamney* was negligent in allowing Nancy Killingsworth to sit partially on the console.[7]

---

**6.** In fact, the court agreed to charge the jury that "defendant has not contended that there was any contributory negligence on the part of the passengers in the vehicle," see *infra* note 7, but then neglected to actually give any such charge.

**7.** The following colloquy occurred at the charging conference:

The Court: What about [the charge from O.C.G.A. § 40–6–242(b)]? ... Do you object to that part?

[Plaintiff counsel]: Yes, sir. Judge, there is no evidence that Nancy Killingsworth obstructed his vision.

[Defense counsel]: There's evidence for the jury to find, because there were two people, to find that he had to lean forward, and .[accident reconstruction expert] Fogerty said he had to lean forward himself with the passen-

gers in there, and he had a more limited line of sight.

The Court: This is a contention that you made in arguing against the admission of the tape, that there was some obstruction to his view.

[Plaintiff counsel]: The obstruction—yes, sir, it's to the angle of the crossing, and the bar, the door bar on the truck itself forces you to lean forward.

[Defense counsel]: And also the passengers; and also the passengers.

[Plaintiff counsel]: Plus, your honor, it's going to put some negligence on the passengers.

[Plaintiff counsel]: This thing says no passenger shall ride in a truck in such a position. They are almost taking the side that, if you are riding in a truck, then you are riding in a position to obstruct the view.

The Court: I don't read it that way. *I think the jury could make the determination that [Nancy Killingsworth] should not have been on the console.* (emphasis added).

The relevance of the claim that Nancy Killingsworth should not have been on the console in the district court's view appears to have been limited to proving McTamney's negligence, because the court agreed that passenger contributory negligence was not at issue. The Killingsworth appellants requested that the court charge the jury as follows:

Ladies and Gentlemen of the Jury, Seaboard does not allege or claim any contributory negligence on the part of Nancy Killingsworth.

In this case, I charge you that since Plaintiff Killingsworth did not have any control or direction over the operation of the automobile in which she was riding at the time of the collision, which is the subject matter of this action, then the negligence of the driver, Brian McTamney, if any, would not be imputed to Nancy Killingsworth.

The discussion that followed the court's request for objections to this proposed charge is enlightening as to the issues actually in the case and the court's intent in giving the charge challenged in this appeal:

[Defense counsel]: I don't think there's an issue in this case about [Nancy Killingsworth] having any control over the automobile, your honor, so I don't see how it's relevant to the jury.

[Plaintiff counsel]: We have to let the jury know. ... It's a guest passenger, your honor, and we need it for the plaintiffs Pate and Killingsworth.... Because, Judge, they kind of try to slide an issue in as to [Killingsworth] in the cab of that truck.... About sitting on the edge.... They haven't alleged any negligence on her part.

The Court: I think it might be better to say that: "In this case I charge you that if a passenger did not have any control or direction."

[Plaintiff counsel]: That's fine.

....

[Defense counsel]: We would object to the first paragraph ... We are alleging that there is some negligence on the part of the passengers and on McTamney in letting the view be blocked. We are not making a claim over against Nancy Killingsworth for that.

The Court: I will not charge the first paragraph....

. . . . .

[Plaintiff counsel]: The problem I have is striking paragraph one, they have not alleged any contributory negligence ... and they are trying to cram us and the McTamney case together. They are wanting the jury to get confused on this comparative negligence thing as between us and the McTamney case, and they are two totally separate cases as far as the liability is concerned, and the jury needs to be told that.

The Court: Is it correct you contend there is no contributory negligence?

[Defense counsel]: We believe that the fact that the two passengers were riding in there in the cab of the truck, a two-seater truck, helped block Mr. McTamney's view.

[Plaintiff counsel]: That's a new issue.

[Defense counsel]: That's not a new tissue [sic].

[Plaintiff counsel]: It's not in the pretrial documents or anything.

The Court: The fact by sitting in there they blocked the view doesn't mean that they were negligent in any fashion.

[Defense counsel]: It was negligence for McTamney to let them sit in that fashion.

The Court: Yes.

[Defense counsel]: What I'm saying is that, you know, there are a lot of things we haven't alleged. Why single out something we have not alleged as negligence on their part. I mean—

[Plaintiff counsel]: You just said you did.... That's not singling out anything.

The Court: Even if your contention is that you submitted it, you don't contend that the passengers were in any way negligent, so you?

[Defense counsel]: Why is there a need to say something that we haven't done?

The Court: I think the jury might come to that conclusion. I think the plaintiffs are right in that respect.

. . . . .

[Defense counsel]: Would you say—if you are going to say that, to make it fair, it seems to me you would need to say: "However, Seaboard contends that it was negligence for the Driver McTamney to allow the passengers to be seated in the fashion that they were."

. . . . .

To single that out, it's like saying, "Well, nobody ever said anything until the actual trial of this case about a heater motor being on in the truck of the cab, this Toyota truck," and to try to say that because we didn't make a specific contention or whatever in the pretrial order, the facts that come out in the trial of case are certainly relevant.

The Court: *There are no facts in the trial of the case from which the jury could find that these passengers were contributorily negligent.*

[Defense counsel]: Well your honor, I would respectfully dissent, that if someone rides in the cab of a truck knowing it's a two-seater and one of them is sitting in the middle, the jury can find that they knew or should have known they were blocking the view of the driver.

The Court: *This has never been a contention you have made.* It is not listed in the pretrial order.

. . . . .

[Plaintiff counsel]: That's an affirmative defense that has to be listed.

The Court: I understand your argument. I will charge as a preface to that second paragraph that the defendant has not contended

The challenged charge cannot fairly be read as bearing on possible driver negligence. First, the plain meaning of the language of the charge itself is that *passengers* have certain duties not to interfere with the operation of motor vehicles. The charge stated that no *passenger* is to ride in such a way as to interfere with the driver's view to the sides and that no *passenger* should ride in such a fashion as to interfere with the driver's control of the driving mechanism of the truck. Second, the statutory origin of the challenged charge supports our construction. A comparison of the statutory provision from which the charge was drawn, O.C.G.A. § 40–6–242(b), to its companion statutory provision, O.C.G.A. § 40–6–242(a), suggests that the charge is properly construed as imposing a duty on passengers. O.C.G.A. § 40–6–242(a) provides that:

> No person shall *drive* a vehicle when it is so loaded, *or when there are in the front seat such a number of persons, exceeding three, as to obstruct the view of the driver to the front or sides of the vehicle* or as to interfere with the driver's control over the driving mechanism of the vehicle.

(emphasis added).[8] If subsection (b) imposes a duty on *drivers* not to allow passengers to ride in such a position as to interfere with the driver's view to the front or to the sides and not to allow passengers to interfere with the driver's control over the driving mechanisms of the vehicle, then subsection (b) and subsection (a) are substantially redundant. Therefore, the language of the charge and its statutory origins support construing the charge as imposing a duty on passengers to avoid sitting in such a manner as to obstruct the driver's view to the sides.

The jury confusion that was likely from the charge relating to passenger contributory negligence was not eradicated by other charges. First, prior to agreeing to give the challenged instruction, the district

court had agreed to charge the jury that "the defendant has not contended that there was any contributory negligence on the part of the passengers in the vehicle." In the actual charge to the jury, however, the court failed to give this clarifying instruction. Second, the presence of third party defendant McTamney in the case exacerbated the potential for jury confusion by creating somewhat complex contributory negligence standards for the jury to apply. The court first instructed the jury that "the plaintiffs and the third party defendant must prove by a preponderance of the evidence that the defendant was negligent and that the defendant's negligence was a legal cause of damage sustained by the plaintiffs and the third party defendant." The court later charged the jury that it could apportion liability between McTamney and Seaboard if the jury found that the accident was caused "partly by the negligence of one and partly by the negligence of the other." If, however, the jury found that McTamney's responsibility "exceeds one-half, that is 50 percent, or equals 50 percent, then he is not entitled to recover from Seaboard at all."

Although the court did instruct the jury that "if Seaboard's negligence in any way was a legal or proximate cause of the collision, then you must find in favor of the Pates and Ms. Hinton and Mr. Killingsworth," we have substantial and ineradicable doubts about whether the jury was confused and misled by the passenger contributory negligence charge in light of the entire charge, the evidence presented, and the contentions of the parties. *See, e.g., Johnson v. Bryant,* 671 F.2d 1276, 1280 (11th Cir.1982) (erroneous instruction is reversible error where court is left with "substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations.") (quoting *Miller v. Universal City Studios, Inc.,* 650 F.2d 1365, 1372 (5th Cir.1981)); *Pesaplastic, C.A. v. Cincinnati Milacron Co.,* 750 F.2d 1516, 1525 (11th

---

that there was any contributory negligence on the part of the passengers in the vehicle. (emphasis added).

**8.** The court refused Seaboard's request that the court charge subsection (a) to the jury, appar-

ently because there were not "such a number of persons, exceeding three" in the cab of McTamney's truck.

Cir.1985) (appellate court looks to "whether the charges, considered as a whole, sufficiently instruct the jury so that the jurors understand the issues involved and are not misled."); *Cruthirds v. RCI, Inc.*, 624 F.2d 632, 636 (5th Cir.1980) (plain error necessitating new trial occurs when instructions "mislead the jury or leave the jury to speculate as to an essential point of law."). We hold, therefore, that the district court abused its discretion in denying the Pate and Killingsworth appellants' motions for a new trial on the basis of this misleading charge. *See Somer v. Johnson*, 704 F.2d 1473, 1478 (11th Cir.1983) (possibility that jury may have employed the wrong criterion of liability to exonerate the defendants requires a new trial).

### B.

■ All appellants contend that the district court erred in charging the jury that:

The testimony of a party who offers himself as a witness in his or its own behalf is to be construed most strongly against him when it is self-contradictory, vague, or equivocal, and he is not entitled to a finding in his favor if that version of his testimony, the most unfavorable to him, shows that the verdict should be against him.

Appellants allege that the instruction should not have been charged in this case because, under Georgia law, the legal principle embodied in the instruction "has no applicability in a case unless there is *no* testimony—other than the party's own vague, contradictory and equivocal testimony—upon which a verdict in his favor might be returned." *Weathers v. Cowan*, 176 Ga.App. 19, 335 S.E.2d 392, 394 (1985).

The district court erred in giving this charge. Although the *Weathers* decision was not published until after the trial in this case, Georgia law at the time of trial indicated that the challenged instruction is appropriate only where there is *no* evidence other than the party's vague, contradictory or equivocal testimony to support a verdict in favor of that party. *See Maurer v. Chyatte*, 173 Ga.App. 343, 326 S.E.2d 543 (1985).[9] The *Maurer* court explained why a court errs in giving this charge where there is other evidence in addition to the party's testimony to support his or her position:

[T]he jury in the instant case would have been authorized to disregard the testimony of appellees' experts and to return a verdict for appellant based upon [appellant's] physician's testimony. However, the contested charge had the effect of negating this possible outcome insofar as it focused *entirely* on appellant's testimony and instructed the jury that it should return a verdict against [appellant] *solely* because the most unfavorable version of appellant's own testimony did not warrant a finding in her favor. Thus, ... the contested instruction "would violate [O.C.G.A. § 24-4-4] which authorizes the jury to consider all the facts and circumstances of the case in determining where the preponderance of the evidence lies." This was harmful error requiring the grant of a new trial.

326 S.E.2d at 546 (emphasis in original) (citations omitted). In this case, despite ample evidence of Seaboard's negligence in addition to McTamney's testimony, the instruction directed the jury to disregard the other evidence and to find in favor of Seaboard because Brian McTamney was the only party whose testimony on his own behalf could have been viewed as self-contradictory, vague, or equivocal.[10]

■ Finding that the challenged instruction was, as a matter of Georgia law, erroneously charged in this case does not end our inquiry. The substance of jury instruc-

**9.** *See also Mattison v. Travelers Indem. Co.*, 167 Ga.App. 521, 307 S.E.2d 39 (1983); *Fowler v. Glover*, 105 Ga.App. 216, 123 S.E.2d 903 (1962); *Sears, Roebuck & Co. v. Wilson*, 215 Ga. 746, 113 S.E.2d 611 (1960); *Castile v. Burton*, 200 Ga. 877, 38 S.E.2d 919 (1946); *Clark v. Bandy*, 196 Ga. 546, 27 S.E.2d 17 (1943); *Ray v. Green*, 113 Ga. 920, 39 S.E. 470 (1901).

**10.** We agree with appellants that the jury might have viewed McTamney's testimony as "self-contradictory, vague, or equivocal." For example, McTamney's testimony that he never saw or heard the train prior to the accident, despite having stopped, looked and listened three times in attempting to cross the tracks, could have been viewed as vague and self-contradictory.

tions in diversity cases is governed by the applicable state law, but questions regarding procedural aspects of jury charges are controlled by federal law and federal rules. *Pesaplastic, C.A. v. Cincinnati Milacron Co.,* 750 F.2d 1516, 1525 (11th Cir.1985); *Foster v. Ford Motor Co.,* 621 F.2d 715, 717 (5th Cir.1980). Accordingly, the court's decision as to whether erroneous jury charges necessitate a new trial is a procedural matter governed by federal law. *See* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2802 (1973). *See also T.D.S., Inc. v. Shelby Mut. Ins. Co.,* 760 F.2d 1520, 1530 n. 8 (11th Cir.1985) (federal law governs whether excessive verdict requires new trial); *Calloway v. Manion,* 572 F.2d 1033, 1038 (5th Cir.1978) (federal law governs whether new trial is required due to insufficient evidence to support verdict).

Seaboard argues that this court should decline to consider this alleged error because appellants failed to object to the challenged charge. In pertinent part, Fed.R. Civ.P. 51 states that: "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." We conclude that appellants did not meet the Rule 51 requirements because they failed to object to the challenged charge on the grounds raised in this appeal.

Appellants objected to the challenged instruction at two points "before the jury retire[d] to consider its verdict." The first objection occurred at the charging conference when appellants counsel objected to the pronoun usage in the proposed charge because the jury might fail to recognize that the charge applied to Seaboard's representatives as well as to McTamney. In response to this objection, the district court amended the charge to state that: "the testimony of a party who offers himself as a witness in his *or its* own behalf is to be construed...." Appellants' counsel responded, "that will be fine." After the court charged the jury, the court asked whether there were any exceptions in addition to those stated at the charging conference. Appellants' counsel then objected to the challenged charge because the court had charged the jury twice on the doctrine of avoidance.[11] At no time did appellants object on the grounds now argued in this appeal.

■ The purpose of Rule 51 is to "prevent unnecessary new trials because of errors the judge might have corrected if they had been brought to his attention at the proper time." *Independent Dev. Bd. of Section, Alabama v. Fuqua Indus., Inc.,* 523 F.2d 1226, 1238 (5th Cir.1975). Despite the clear language of Rule 51, we have recognized two narrow exceptions where a new trial will still be granted despite a party's failure adequately to object to the erroneous charge: (1) where "the party's position has previously been made clear to the court and it is plain that a further objection would have been unavailing," *Lang v. Texas & Pacific R.R. Co.,* 624 F.2d 1275, 1279 (5th Cir.1980); and (2) where the error is "so fundamental as to result in a miscarriage of justice" if a new trial is not granted. *Iervolino v. Delta Air Lines, Inc.,* 796 F.2d 1408, 1414 (11th Cir.1986); *Fuqua Indus.,* 523 F.2d at 1238. Only the

---

11. The discussion on plaintiff's objections to the charge was limited to the following:

 [Plaintiffs' counsel]: As to the court's charge that the testimony of the parties be construed most strongly against himself, we would except in that it may give the appearance that the representative of the corporation is exempt from that.

 The Court: Well, I thought you excepted last night to that charge. That is a charge that was submitted last night.

 [Plaintiffs' counsel]: Yes, sir. I thought—

 The Court: I don't want you to restate any exception that you made last night. We would be here all day with that.

 [Plaintiffs' counsel]: Sure. Although this was excepted to last night, we are excepting to it for a different reason, and that is that the court charged the avoidance law twice in the charge.

 The Court: I noticed that when I was reading it, but I tried to cure that by telling them initially that, if I did that by accident—I eliminated about a third of the charges or portions of charges on the bench during the day because of duplication.

latter exception, the so-called "plain error doctrine," potentially applies in this case.[12]

■ In order to merit reversal as plain error, appellants must establish that the challenged instruction was an incorrect statement of the law and that it was probably responsible for an incorrect verdict, leading to substantial injustice. *Rodrigue v. Dixilyn Corp.*, 620 F.2d 537, 541 (5th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981). Where a jury is given an erroneous charge which will "mislead the jury or leave the jury to speculate as to an essential point of law," the error is sufficiently fundamental to warrant a new trial despite a party's failure to state a proper objection. *Cruthirds v. RCI, Inc.*, 624 F.2d 632, 636 (5th Cir. 1980).

■ As noted above, the challenged charge was improper under Georgia law. We agree with the Georgia courts that the charge instructs a jury that, where a party's testimony might be viewed as contradictory, vague, or equivocal, the jury must disregard all other evidence and enter a verdict against the party *"solely* because the most unfavorable version of appellant's own testimony did not warrant a finding in his favor." *Maurer v. Chyatte,* 173 Ga. App. 343, 326 S.E.2d 543, 546 (1985). Despite other charges instructing the jury to consider all the evidence in the case, we are not convinced that "the verdict ... would have been substantially the same under proper instructions." *Sheppard Fed. Credit Union v. Palmer,* 408 F.2d 1369, 1372 (5th Cir.1969). *See also Hunt v. Liberty Lobby,* 720 F.2d 631, 647 (11th Cir. 1983) (erroneous jury instruction creating uncertainty over whether jury followed constitutionally-mandated criteria was fundamental error necessitating new trial); *Independent Dev. Bd. of Section, Alabama v. Fuqua Indus.,* 523 F.2d 1226, 1239 (5th Cir.1975) (erroneous jury charge that set up "an additional hurdle to a favorable jury verdict" was plain error requiring new trial because possibility of prejudice was so significant "that it cannot be ignored"). Accordingly, we hold that the substantial risk that the jury disregarded its function to consider all of the evidence and entered a verdict against appellant McTamney solely because he testified on his own behalf constitutes fundamental error necessitating a new trial.

Having concluded that the fundamental error caused by this charge requires a new trial, we next consider appellee's argument that this court nevertheless is without power to grant a new trial on the basis of the alleged error because appellants did not raise the issue in their original motions for a new trial. Although all appellants filed timely notices of appeal,[13] their only argument with respect to the challenged charge was appellant McTamney's contention that the charge should have included the names of Seaboard's agents in order to avoid confusing the jury into believing that only McTamney's testimony need be strictly scrutinized for possible bias.[14] About four months after the new trial motions, the district court, noting that the new trial motions presented "a close question," held oral argument on the motions. On December 2, 1985, almost seven months after the original new trial motions, the Killingsworth appellants filed an amended motion for new trial presenting objections to the challenged charge based upon the *Weathers* case discussed above. The court granted an extension of time for Seaboard to respond to the amended motion. Seaboard argued in response that the district court should not consider this new allegation of error because, *inter alia,* this ground was not presented within the mandatory and

---

12. Appellants do not allege, and the record does not support, any claim that appellants brought their objections to the challenged instruction to the attention of the trial court at any point in the proceeding. There is also no indication that the district court had already indicated that an objection on the grounds alleged in this appeal would have been unavailing.

13. Fed.R.Civ.P. 59(b) requires that motions for new trial be served not later than 10 days after the entry of judgment.

14. This objection was similar to that raised at the charging conference. *See supra* note 7.

jurisdictional time constraints of Fed.R. Civ.P. 59(b).[15]

■ This circuit has not decided whether a district court, in ruling on a timely motion for a new trial, may properly consider a new ground of alleged error raised for the first time in an amended motion filed after the ten day period in Fed.R.Civ.P. 59(b) but before the district court has ruled on the motion. *See, e.g., Black v. Fidelity & Guar. Ins. Underwriters,* 582 F.2d 984, 989 (5th Cir.1978) (deciding claim on merits "[r]ather than address the thorny question of whether a timely motion under Rules 50 & 59, Fed.R.Civ.P., can belatedly be amended to assert a new ground"). We conclude that a district court may, in its discretion, allow an amendment to a timely motion for a new trial prior to its decision on the merits of the motion and that the court may consider new grounds raised in the amended motion.

**15.** *See supra* note 13. Although the court's order denying appellants' motions for a new trial did not expressly indicate whether the court considered the new grounds of alleged error asserted in the Killingsworth appellants' amended motion for a new trial, we construe the court's order as having considered the new grounds. The court allowed appellants' amended motion for a new trial and granted an extension of time for Seaboard to file a response. Moreover, the court's order held that "after reviewing the jury instructions *in light of the arguments now raised,* the Court concludes that the charge as a whole fairly and adequately apprised the jury of the applicable law." (emphasis added). This statement suggests that the court considered all of the arguments regarding jury instructions.

**16.** *See, e.g., Citizens Nat'l Bank of Lubbock v. Speer,* 220 F.2d 889, 891 (5th Cir.1955) (court order granting new trial was "not done out of time by the court on its own initiative and it was therefore not beyond the court's jurisdiction" because court relied upon a ground raised in new trial motion); *Pruett v. Marshall,* 283 F.2d 436 (5th Cir.1960) (district court could allow amendment to timely new trial motion in a proper case, but not where inexcusable delay in filing amendment was not explained and movant was not prejudiced); *Russell v. Monongahela R.R. Co.,* 262 F.2d 349, 354 (3d Cir.1958) (district court lacks authority to consider new grounds in support of new trial motion filed after 11 day service period had run); *Hulson v. Atchison, Topeka and Santa Fe R.R. Co.,* 289 F.2d 726, 729 (7th Cir.) (district court could not

The ten day period for serving new trial motions is jurisdictional and cannot be extended in the discretion of the district court. Fed.R.Civ.P. 6(b); *Gribble v. Harris,* 625 F.2d 1173, 1174 (5th Cir. Unit A 1980); *Butler v. Coral Volkswagen, Inc.,* 804 F.2d 612, 614 (11th Cir.1986). Prior to the 1966 amendments to Rule 59, most courts held that a district court could not grant a motion for a new trial on any ground not raised by a motion served within the ten day limitations period in Rule 59(b).[16] As originally proposed, the 1966 amendment to Rule 59 would have allowed district courts to consider, after the ten day service period had expired, grounds for a new trial raised either by a party or by the court's own initiative as long as the party had filed a timely motion for new trial.[17] The advisory committee note to the proposed amendment explained that prior court decisions had created an "undesirable result" because:

> consider grounds for new trial offered after ten day service period expired despite oral grant of extension of time for filing), *cert. denied,* 368 U.S. 835, 82 S.Ct. 61, 7 L.Ed.2d 36 (1961); *Francis v. Southern Pacific Co.,* 162 F.2d 813, 818 (10th Cir.1947) (amendment to motion for new trial filed after 11 day service period could not be considered by district court), *aff'd,* 333 U.S. 445, 68 S.Ct. 611, 92 L.Ed. 798 (1948); *McCloskey v. Kane,* 285 F.2d 297, 298 (D.C.Cir.1960) (per curiam) (district court correctly refused to consider amendment to new trial motion filed after 11 day service period had expired). *See generally,* 6A J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* ¶ 59.09[2] (2d ed. 1986).

**17.** The original 1966 amendment to Rule 59 would have altered the language of Rule 59(b) as follows:

> (b) **Time for Motion.** A motion for a new trial shall be served not later than 10 days after the entry of the judgment. *After a motion has been thus timely served, the court in its discretion may (1) upon application and notice while the motion is pending, permit the moving party to amend the motion to state different or additional grounds; (2) grant the pending motion upon grounds not stated by the moving party and in that case the court shall specify the grounds in its order.*

Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, *Preliminary Draft of Proposed Amendments to Rules of Civil Procedure for the United States District Courts* (1964), *reprinted in* 34 F.R.D. 325, 404–05.

Once an effective new trial motion has been made, and the finality of the judgment for purposes of appeal has been thereby suspended, there is no reason for foreclosing amendment of the motion when this would be justified according to the usual standards for permitting amendments, nor is there reason for barring a decision of the motion on grounds thought meritorious by the court although not advanced by the moving party.[18]

Nevertheless, the final draft of the 1966 amendment to Rule 59 omitted the provision allowing a court to consider new grounds raised by a party amending its motion for new trial but adopted, as an amendment to Rule 59(d), a provision allowing a district court, on its own initiative, to "grant a motion for new trial, timely served, for a reason not stated in the motion." Professor Kaplan explained the anomalous result created by this partial liberalization of Rule 59(b):

> [T]he provision regarding amendment of the motion by the party ... might be thought objectionable as looking like an open invitation to litigants to put in stopgap motions in the hope of later improving them. But there is nothing in the final text to prevent a party from informally suggesting an additional ground to the court, which the court may then adopt as its own in granting the motion.

Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (II)*, 81 Harv.L.Rev. 591, 604 (1968).

After the 1966 amendments took effect, the language of Rule 59(d) expressly allowed district courts to grant a timely motion for new trial "for a reason not stated in the motion." The circuit courts have divided on the question of whether district courts may, in considering a timely new trial motion, entertain new grounds raised by the moving parties rather than by the court *sua sponte*. Compare *Roy v. Volkswagenwerk Aktiengesellschaft*, 781 F.2d 670 (9th Cir.1985) *and Central Microfilm Serv. Corp. v. Basic/Four Corp.*, 688 F.2d 1206 (8th Cir.1982), *cert. denied*, 459 U.S. 1204, 103 S.Ct. 1191, 75 L.Ed.2d 436 (1983) *and Pogue v. International Indus. Inc.*, 524 F.2d 342 (6th Cir.1975) *with Arkwright Mut. Ins. Co. v. Philadelphia Elec. Co.*, 427 F.2d 1273 (3d Cir.1970) *and Smith v. Pressed Steel Tank Co.*, 66 F.R.D. 429 (E.D.Pa.), *aff'd*, 524 F.2d 1404 (3d Cir.1975) *and Conrad v. Graf Bros., Inc.*, 412 F.2d 135 (1st Cir.), *cert. denied*, 396 U.S. 902, 90 S.Ct. 215, 24 L.Ed.2d 178 (1969).

We find that reason and precedent favor allowing district courts, in their discretion, to consider new grounds raised in amendments to timely new trial motions. Once the finality of the judgment has been suspended by the filing of a timely motion for new trial, there is little justification for a rule that dictates that a district court may not, in the interest of justice, decide to consider a new ground alleged by the movant as warranting a new trial. As Professor Kaplan pointed out, any alleged justification becomes particularly specious in light of the fact that Rule 59(d) clearly permits a district court to consider informal suggestions from the movant as to additional grounds for relief.[19] Moreover, although the court in *Pruett v. Marshall*, 283 F.2d 436 (5th Cir.1960),[20] ultimately upheld the district court's decision not to allow an untimely amendment to a new trial motion,[21] the court indicated a willing-

---

**18.** *Id.* at 405.

**19.** Our decision in *O'Donnell v. Georgia Osteopathic Hosp., Inc.*, 748 F.2d 1543 (11th Cir.1984), supports our conclusion. In *O'Donnell*, we held that the district court's discretionary power under Rule 59(d) to consider reasons beyond those stated in a timely motion for new trial authorizes this court to review grounds that were omitted from the new trial motion. *Id.* at 1548 n. 7. It would create an anomalous rule to hold that we may consider grounds not raised at all before the district court, but we may not consid-

er grounds for a new trial raised in an amendment to a party's timely motion.

**20.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**21.** The court found that refusing to consider an amendment asserting new grounds was reasonable in *Pruett* because: (1) the appellant gave no

ness to allow courts to consider such amendments in a proper case:

> There is respected authority that when a motion for a new trial is made within the ten-day period for filing provided in Rule 59(b), the trial court should be able in the exercise of a sound discretion, to allow a tardy amendment stating an additional ground for a new trial.... We would be inclined to take [this] liberal view—in the proper case.

*Id.* at 440.

 We conclude therefore that the district court may consider amendments to a party's original timely motion for a new trial as "a reason not stated in the motion" under Fed.R.Civ.P. 59(d), and that the other requirements of Rule 59(d) apply to the court's consideration of the newly raised grounds. As such, the court must give the parties notice and an opportunity to be heard, and if the court grants a new trial, it must specify the grounds therefor in its order. Fed.R.Civ.P. 59(d). The district court retains discretion as to whether to allow, when justice so requires, an amendment stating new grounds. *See* 6A J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice,* ¶ 59.09[2] (2d ed. 1986).

 Applying our ruling to the facts of this case, we find that the district court did not abuse its discretion in allowing appellants to assert a new ground for relief in its amended motion for a new trial. Appellants' amendment was precipitated by the announcement of the decision in *Weathers v. Cowan,* 176 Ga.App. 19, 335 S.E.2d 392 (1985). Although the district court would

have been justified in refusing to permit the amendment asserting new grounds due to the substantial delay involved and the fact that the *Weathers* case was not the first Georgia decision to enunciate the principles involved in appellants' argument, the court was within its discretion in determining that the question raised in the amendment was very serious and not duplicitous of the original motion for a new trial. Moreover, in allowing the amendment, the court complied with the notice and hearing requirements of Rule 59(d).[22] As such, the new ground for relief stated in appellants' amended motion for new trial was properly before the district court.[23]

## II

Having concluded that all appellants are entitled to a new trial in this case, we find it unnecessary to rule on the remaining issues raised in this appeal. We reverse the district court's denial of the motions for a new trial and remand to the district court for a new trial.

REVERSED and REMANDED.

---

reason for delaying five weeks prior to filing the amendment to his new trial motion; (2) the delay was inexcusable in light of the fact that the amendment was not filed until 11 days after the hearing on the original motion; (3) the appellant was not injured because the amendment added virtually nothing to the original new trial motion; and (4) any additional grounds raised in the amendment were not likely to succeed on the merits. *Pruett,* 283 F.2d at 440.

**22.** After appellants filed their amended motion for new trial, the court approved a consent order extending the time during which Seaboard might file a response to the amended motion. Seaboard then filed its response containing the arguments it raises in this appeal.

**23.** We do not, therefore, decide whether this court might consider a ground for new trial not raised before the district court. *See O'Donnell v. Georgia Osteopathic Hosp., Inc.,* 748 F.2d 1543, 1548 n. 7 (11th Cir.1984).