[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-11417

_____

LINDA BANKS,

Plaintiff-Appellant,

*versus*

MARKETSOURCE, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:18-cv-02235-JSA

_____

Before JILL PRYOR, NEWSOM, and LAGOA, Circuit Judges.

2                    Opinion of the Court                    23-11417

PER CURIAM:

Four days after Linda Banks returned from approved Family and Medical Care Act ("FMLA") leave, her employer—MarketSource, Inc.—fired her. In response, she sued under the FMLA, Title VII, and 42 U.S.C. § 1981, alleging that she was illegally fired because of her leave and her race. As relevant here, the district court dismissed her FMLA interference and FMLA retaliation claims at the summary judgment stage. Her remaining race-discrimination Title VII and § 1981 claim failed in a jury trial overseen by a magistrate judge, and the magistrate judge rejected her subsequent motion for a new trial. Banks now appeals (1) the grant of summary judgment against the two FMLA claims and (2) the denial of her new trial motion on her Title VII race-discrimination claim. After carefully considering the record, and with the benefit of oral argument, we affirm the district court's summary judgment order and the magistrate judge's order denying Banks's motion for a new trial.

## I

### A

The facts are known to the parties; we repeat them here only as necessary to decide the case. Linda Banks is a black woman who suffers from chronic hypoglycemia, a medical condition that makes it difficult to work during flareups and is exacerbated by stress. She worked at MarketSource as a project manager for just under six years until her termination. About a year and a half before she was fired, she began working in MarketSource's Project Manager

Organization ("PMO"), a small team of project managers tasked with helping the executive leadership team with new projects. While working for the PMO, Banks was supervised consecutively by three executive directors: Sam Tasanasanta, Bill Weaver, and Paul Pomplon.

A few months after Pomplon started, he assigned Banks to the Sales Benchmark Index ("SBI") Project, which was overseen by Ted Grulikowski, the Vice President of MarketSource's Commercial Business Unit. Around that time, according to Pomplon, he began noticing problems with Banks's work product. Banks contends, by contrast, that he started treating her negatively for reasons tied to her race. She met with a MarketSource human resources employee, Ingrid Ervin-Harris, to complain about Pomplon, although she did not say during that meeting that his behavior was because of her race. On the same day, after that meeting, Pomplon scheduled a meeting with Banks, at which he put her on a Performance Improvement Plan ("PIP")—a formal process that outlines issues that an employee has and provides a timeframe for her to improve.

While on the PIP, Banks informed Pomplon, Chris Walter (Pomplon's supervisor), and Ervin-Harris about her chronic hypoglycemia. Although Ervin-Harris expressed doubt concerning the seriousness of Banks's condition, she approved an "accommodation" of periodic 30-minute breaks after Banks provided her with a doctor's note. Banks claims that "a couple of times" Pomplon

refused to let her take her medically required breaks.  Br. of Appellee at 12.

On June 8, 2016, just over two weeks before the PIP ran its course, MarketSource decided to terminate Banks's employment. Pomplon and Ervin-Harris scheduled a meeting with her for June 16, at which they intended to inform her of her termination. But three days before that day, Banks called in sick because of her hypoglycemia and requested two weeks of full-time leave.  Ervin-Harris directed her to MarketSource's parent company, Allegis, to process her FMLA request.  After Banks provided Allegis with a doctor's note, the FMLA leave was approved and then extended twice.  On July 26, 2016, four days after Banks returned to work, Pomplon and Ervin-Harris terminated her.

**B**

Banks sued MarketSource, alleging as relevant here, (1) interference under the FMLA, (2) retaliation under the FMLA, and (3) race discrimination under Title VII and § 1981.[1]  At the close of discovery, MarketSource moved for summary judgment.  A magistrate judge recommended that summary judgment be granted with regard to the two FLMA claims and denied with regard to the

---

[1] She also sued for retaliation under Title VII, but she has not appealed this claim's dismissal at the summary judgment stage.  Further, Title VII and § 1981 claims are "subject to the same standards of proof and use the same analytical framework," *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 n.6 (11th Cir. 2018), so for the sake of readability, we will refer to her race discrimination claim merely as a Title VII claim throughout this opinion.

Title VII claim, and the district court adopted the report and recommendation over objections from both parties. The parties then consented to the magistrate judge presiding over the resulting trial. After a five-day trial, the jury returned with a defense verdict on Banks's remaining Title VII claim. Banks filed a motion for a new trial and a supplement to that motion, which the magistrate judge denied. This is Banks's appeal.

## II

We hold that the district court did not err in granting summary judgment against Banks's two FMLA claims.[2] In relevant part, the FMLA entitles an "eligible employee" to "12 workweeks of leave during any 12-month period for . . . a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "[T]he FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act."

---

[2] "This [C]ourt reviews a grant of summary judgment *de novo*, applying the same standard as the district court." *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001). We therefore "view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion," resolving "[a]ll reasonable doubts about the facts . . . in favor of the non-movant." *Clemons v. Dougherty Cnty.*, 684 F.2d 1365, 1369 (11th Cir. 1982).

*Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1206 (11th Cir. 2001) (citing 29 U.S.C. § 2615(a)(1), (2)).

Banks asserted both types of FMLA claims in her complaint: (1) a claim alleging that MarketSource interfered with her FMLA leave by terminating her[3] and (2) a claim alleging that MarketSource retaliated against her by terminating her in response to her request for FMLA leave. In the complaint, the only leave she mentioned was the full-time FMLA leave that she took after MarketSource had decided to fire her. The district court held (1) that the interference claim fails because Banks's termination could not have been for reasons related to her protected leave and (2) that the retaliation claim fails because there was no causal link between her leave and termination. We affirm the district court's judgment on both fronts.[4]

---

[3] Banks also brought an interference claim alleging that she was harassed while on leave, but she has since abandoned that claim, so we will not consider it on appeal.

[4] We also affirm the district court's holding that it would not consider Banks's alleged intermittent leave because it was not mentioned in her complaint and was brought up for the first time in response to a motion for summary judgment. In her Response in Opposition to MarketSource's motion for summary judgment, Banks, for the first time, asserted that her periodic 30-minute breaks were protected intermittent FMLA leave relevant to her FMLA claims. This is improper under our precedent, which holds that "[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam). Instead, "[a]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)." *Id.*

## A

"To state a claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." *Strickland*, 239 F.3d at 1206–07. And when it comes to interference claims regarding termination, "if an employer can show that it refused to reinstate the employee for a reason wholly unrelated to the FMLA leave, the employer is not liable." *Id.* at 1208.

Banks's FMLA interference claim concerning her termination fails because her termination can only have been "wholly unrelated to the FMLA leave." *See id.* Banks first attempted to exercise her right to full-time FMLA leave on June 13, 2016—after MarketSource had already decided to fire her on June 8. So MarketSource could not have decided to fire Banks for exercising her

---

In an FMLA case citing *Gilmour*, we held that when a complaint refers only to a plaintiff's own "alleged serious health condition," the subsequent assertion of caring for a "*parent's* serious health condition" is a new "claim" because the "separate statutory basis" is a "fundamental change" to the nature of the initial claim. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006). *Compare* 29 U.S.C. § 2612(a)(1)(D), *with id.* § 2612(a)(1)(C). Banks's maneuver is materially analogous to the one rejected in *Hurlbert*, because a claim related to full-time FMLA leave has a "separate statutory basis" from a claim related to intermittent FMLA leave. 439 F.3d at 1297. In fact, the claims in *Hurlbert* derive from more closely related statutory bases than the claims here—both claims in *Hurlbert* are in 29 U.S.C. § 2612(a)(1)'s list, while the claims here arise from separate sections of 29 U.S.C. § 2612 (full-time leave is covered by subsection (a), while intermittent leave is covered by subsection (b)). We therefore refuse to consider Banks's alleged intermittent leave in our analysis of her FMLA claims.

right to full-time FMLA leave because she had not yet exercised it at the time of the decision.

## B

"[T]o succeed on a retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." *Strickland*, 239 F.3d at 1207. "In order to state a claim of retaliation, an employee must allege that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity." *Id.* Requests for leave are "statutorily protected activit[ies]" for purposes of an FMLA retaliation analysis. *Pereda v. Brookdale Senior Living Cmtys., Inc.*, 666 F.3d 1269, 1275–76 (11th Cir. 2012).

Banks's FMLA retaliation claim related to her termination also fails. Like in the FMLA interference analysis above, the decision to fire her could not be "causally related to the protected activity" because the "statutorily protected activity" of seeking full-time FMLA leave had not yet occurred when the decision was made. *See Strickland*, 239 F.3d at 1207.

★ ★ ★

For these reasons, we affirm the district court's grant of summary judgment against Banks's FMLA interference and retaliation claims.

### III

We hold that the magistrate judge did not abuse his discretion in denying Banks's motion for a new trial.[5] "The court may, on motion, grant a new trial . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). Where, as here, a verdict is being challenged "on the basis of a district court's incorrect evidentiary ruling," an appellant must satisfy a three-step process. *United States v. Stephens*, 365 F.3d 967, 974 (11th Cir. 2004). "First, he must demonstrate either that his claim was adequately preserved or that the ruling constituted plain error." *Id.* (citing Fed. R. Evid. 103(a), (d)). "Second, he must establish that the district court abused its discretion in interpreting or applying an evidentiary rule." *Id.* And third, "he must establish that this error 'affected . . . a substantial right.'" *Id.* (quoting Fed. R. Evid. 103(a)). To justify a new trial, the elements of the case must "add up to a conclusion that the improper admission of evidence was not harmless error." *United States v. Hands*, 184 F.3d 1322, 1334 (11th Cir. 1999).

After the jury's verdict, the magistrate judge denied Banks's motion for a new trial. Banks now appeals this order, alleging a

---

[5] "We review a district court's denial of a motion for a new trial for an abuse of discretion." *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1312 (11th Cir. 2013) (quoting *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1200 n.16 (11th Cir. 2009)). And we "review[] evidentiary rulings for abuse of discretion and reverse[] for a new trial where there is substantial prejudice." *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir. 2002).

wide range of issues concerning the trial.  We affirm the magistrate judge's decision on every issue.

## A

Banks raises several claims that are untimely because she did not include them in her initial brief in support of her Motion for a New Trial, instead raising them for the first time in her Supplemental Motion.  While a district court "may consider amendments to a party's original timely motion for a new trial," the district court may also decide "not to allow an untimely amendment to a new trial motion."  *Pate v. Seaboard R.R., Inc.*, 819 F.2d 1074, 1085–86 (11th Cir. 1987) (footnote omitted).  The magistrate judge did grant leave for Banks to file a supplemental motion, but Banks's request was only to add "***record cites*** once the trial transcript becomes available," not to "raise new legal arguments."  Order Den. Pl.'s Mots. for a New Trial, at 10, Doc. 185 (quoting Mot. for a New Trial, at 2 n.1, Doc. 160, and Resp. in Opp'n to Mot. for Extension of Time to Resp. to Pl.'s Mot. for a New Trial, at 2, Doc. 164).  After she filed her Supplemental Motion, the magistrate judge allowed the "beef[ing] up [of] existing arguments relating to the originally-asserted claims" (such as additional citations, facts, case law, etc.), but not "new claims and arguments."  *Id.* at 11.  Accordingly, we affirm dismissal of the untimely raised claims regarding evidence included as to the subsequent hiring of Srividya Subramanian, evidence provided by Pomplon concerning his character, and Ervin-Harris's testimony about Weaver stating that Banks was error-prone.

Banks also raises some other claims that were not preserved via an objection at trial.  A party must "timely object[] or move[] to strike" on "the specific ground" to "claim error in a ruling to admit . . . evidence."  Fed. R. Evid. 103(a).  Banks did not properly object at trial in the following circumstances: Walter's testimony during direct examination about a statement from Grulikowski that he would never work with the PMO so long as Banks worked there; the alleged "backdoor[ing]" of an affirmative defense via Grulikowski's statement; Pomplon's testimony regarding criticisms of Banks's job performance by Melissa Lopez (a Marketing Director working for Grulikowski); and MarketSource's closing argument, which mentioned the statement by Grulikowski, Lopez's criticisms of Banks, and criticism of Banks from employees of SBI.  And Banks hasn't proven that any of these errors were plain error—that is, "so obvious that failure to correct [them] would jeopardize the fairness and integrity of the trial."  *United States v. Bailey*, 123 F.3d 1381, 1400 (11th Cir. 1997).

## B

None of Banks's remaining claims warrants a new trial.  She argues that Walter's testimony during cross-examination about the Grulikowski statement was impermissible hearsay.  But it wasn't hearsay because it was not being offered "to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  Rather, the evidence of Grulikowski's statement was tendered to "help establish that [Walter] was motivated, in good faith, to discharge [Banks] for reasons other than [race]."  *Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1322–23 (11th Cir. 1982) (footnote omitted).  And while Walter did

not personally decide to fire Banks, he was part of the collaborative decision to fire her and had "ultimate approval or veto responsibility" for terminations. Order Den. Pl.'s Mots. at 20. Banks also argues that MarketSource's questioning of Pomplon about Grulikowski's statement during direct examination was impermissible hearsay. But this is also not hearsay because, in response to that line of questioning, Pomplon said he was not aware of Grulikowski's statement.

Banks further complains that Grulikowski was not listed in MarketSource's Rule 26 disclosures. But this rule does not apply to Grulikowski. It requires initial disclosure of any "individual . . . that the disclosing party may use to support its claims or defenses," Fed. R. Civ. P. 26(a)(1)(A)(i), which, as the Advisory Committee Notes explain, is limited to "identification of witnesses and documents that the disclosing party may use to support its claims or defenses," *see* Fed. R. Civ. P. 26 advisory committee's note to 2000 amendment. Grulikowski did not need to be disclosed by MarketSource because he was not a witness.

Banks next contends that Pomplon's testimony during direct examination about the criticism from the two SBI employees is impermissible hearsay. But like Walter's testimony about Grulikowski's statement, Pomplon's mention of the criticisms was not being asserted for the "truth of the matter asserted" but rather to establish his motivation for firing Banks.

Banks also complains that Pomplon mentioning that the next person he hired into the PMO after firing Banks was a black

man (Brandon Burrows) is improper character evidence under Federal Rule of Evidence 404(a)(1).  But the evidence of Burrows's hiring was not used as character evidence.  Instead, it was submitted as evidence of "intent and purpose vis-à-vis the supervisor's treatment of the plaintiff."  Order Den. Pl.'s Mots. at 32–33, 38; *see Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1286 (11th Cir. 2008) (explaining that evidence about a defendant's "motive, . . . intent, . . . [or] plan" with regard to alleged discrimination against a plaintiff is admissible under Rule 404(b)).

Banks further argues that the testimony about Pomplon hiring Burrows violates Rule 403's protection against "matter[s] of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect."  *United States v. Sawyer*, 799 F.2d 1494, 1506 (11th Cir. 1986) (quoting *United States v. Thevis*, 665 F.2d 616, 633–34 (5th Cir. 1982)).  Her primary evidence for this is that the hiring of Burrows happened nine months (or five months, as the magistrate judge found, *see* Order Den. Pl.'s Mots. at 31) after Banks was fired, which "is not a short time frame" and therefore "has no relevance to Banks'[s] firing."  Br. of Appellant at 53–54.  But in Title VII race-discrimination cases, an element of the prima facie case is "that [the plaintiff] was replaced by someone outside of his protected class or received less favorable treatment than a similarly situated person outside of his protected class."  *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015).  Evidence concerning who was hired into the PMO after Banks was fired is directly relevant to the Title VII race-discrimination claim.

Banks finally asserts that statements Pomplon made concerning the involvement of MarketSource's in-house attorney in hiring decisions violated a pretrial order for MarketSource not to introduce evidence that it relied on the advice of lawyers in terminating Banks. Banks is correct that such a pretrial order exists, *see* Order Granting Mot. in Lim., Doc. 87, but this incident is not a ground for a new trial for two reasons. First, Pomplon didn't explicitly violate the order. He didn't say MarketSource's in-house attorneys were consulted in regard to Banks's firing but instead stated that MarketSource's usual termination process involves consulting legal counsel. Trial Tr. at 977, Doc. 177. Second, even though Pomplon's statement may not have even violated the order, the magistrate judge instructed the jury to disregard the question and answer and instructed MarketSource's counsel to re-word the question. And Banks has provided no evidence that there is an "overwhelming probability" that the jury could not follow the magistrate judge's instructions. *See Richardson v. Marsh*, 481 U.S. 200, 208 (1987).

★ ★ ★

We accordingly affirm the magistrate judge's denial of Banks's motion for a new trial.

### III

For the foregoing reasons, the district court's summary-judgment dismissal of Banks's FMLA claims and the magistrate judge's denial of her motion for a new trial are **AFFIRMED**.